UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| DOUGLAS E. FASBURG, | ) ) ) |
| Plaintiff, | ) Case No. 1:13-cv-708 ) |
| v. | ) Honorable Paul L. Maloney ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) **REPORT AND RECOMMENDATION** ) |
| Defendant. | ) ) |
| _____ | ) |

      This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for supplemental security income benefits (SSI). On August 5, 2010, plaintiff filed his application for SSI benefits. He alleged a January 1, 2004 onset of disability. (A.R. 139-42).

      Plaintiff was in prison or jail during almost the entire period from his alleged onset of disability through the date of the ALJ's decision. Plaintiff is not eligible to receive SSI benefits for any months he was confined in a jail or prison. *See* 42 U.S.C. § 1382(e)(1)(A); 20 C.F.R. § 416.1325. Plaintiff testified that he was 29-years old, and he estimated that he had been incarcerated "13, 14 years, maybe more" of his life. (A.R. 36-37). He indicated that he "was incarcerated from [ages] 19 to 22 for assault and from 22 to 27, for assault with intent to do great bodily harm less than murder." (A.R. 318). On August 3, 2010, plaintiff was released from prison (A.R. 320). Two days later, on August 5, 2010, he filed his application for SSI benefits. Because SSI benefits are not awarded on a retroactive basis, plaintiff's earliest possible entitlement was September 2010. Plaintiff

testified that he was "locked up" in January 2012 (A.R. 45), and on April 27, 2012, he gave his hearing testimony "from jail." (A.R. 18). Plaintiff indicated that he would remain incarcerated for several more years. (A.R. 18). There is no evidence suggesting that plaintiff was released from jail at any time before the ALJ entered his decision on June 22, 2012. It is difficult to determine with precision plaintiff's months of prison or jail confinement from his medical records. It is assumed for analytical purposes that plaintiff was eligible to receive SSI benefits for at least some portion of the fifteen-month period from September 2010 through December 2011.

Plaintiff's claim for SSI benefits was denied on initial review. On April 27, 2012, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 30-60). On June 22, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-22). On May 22, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ committed reversible error by finding that plaintiff did not meet the requirements of listing 12.05(C);

2. The ALJ committed reversible error by using improper boilerplate language in his opinion;

3. The ALJ "committed reversible error by basing a hypothetical question to the vocational expert upon inadmissible evidence[;]" and

4. The ALJ was biased and should have recused himself from hearing this case.

(Statement of Issues, Plf. Brief at 10, docket # 12). I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see*

*Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after August 5, 2010, the application date. (A.R. 15). Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning, bipolar disorder, intermittent explosive disorder, alcohol abuse, and history of polysubstance abuse." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple tasks; occasional contact with the public, coworkers and supervisors; and no fast pace jobs or jobs with production quotas.

(A.R. 17). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 17-21). Plaintiff had no past relevant work. (A.R. 21). Plaintiff was 29-years-old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 21). Plaintiff has a limited education and is able to

communicate in English. (A.R. 21). The ALJ found that the transferability of job skills was not an issue because plaintiff had no past relevant work. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 215,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 53-54). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled.[1] (A.R. 22).

**1.**

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet the requirements of listing 12.05(C). (Plf. Brief at 11-13). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009). It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the

---

[1] Plaintiff has a significant substance abuse history including crack cocaine, powder cocaine, marijuana, heroin, alcohol, and crystal meth. (*See*, *e.g.*, A.R. 308, 315, 320, 347-50). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. Aug. 17, 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d 380, 365 (6th Cir. 2013).

requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation[2] is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of listing for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

---

[2]In 2013, a revised version of listing 12.05 went into effect, replacing the term "mental retardation" with "intellectual disability." *Peterson v. Commissioner*, 552 F. App'x 533, 536 n.1 (6th Cir. 2014). The substantive components of the listing remained unchanged. *See Hickel v. Commissioner*, 539 F. App'x 980, 982 n.1 (11th Cir. Oct. 28, 2013). The terms "mental retardation" and "intellectual disability" can be used interchangeably, because they refer to the same disorder. *See Talavera v. Astrue*, 697 F.3d 145, 148 n.2 (2d Cir. 2012). However, for the sake of clarity, courts generally use the old terminology when conducting appellate review of administrative decisions made before the terminology was revised. *See Peterson*, 552 F. App'x at 536 n.1; *Hickel*, 539 F. App'x at 982 n.1.

> 12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> 
>     The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> 
> A.  Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D.  A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
> 
> > 1.  Marked restriction of activities of daily living; or
> > 2.  Marked difficulties in maintaining social functioning; or
> > 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> > 4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff conceded that he had no significant physical impairments. He sought to establish an entitlement to SSI benefits based solely on mental impairments. (A.R. 35, 58). He was, however, never hospitalized for any mental impairment. Plaintiff has a minimal history of mental health treatment. He indicated that when he takes his medication he has a stable mood and is able to control himself better. Nonetheless, plaintiff attempted to persuade the ALJ that he suffered from listing-level mental retardation under listing 12.05(C) based on his low IQ test scores in October 2001 which indicated "borderline intellectual functioning"[3] (A.R. 295), relatively poor academic

---

[3] Borderline intellectual functioning is a "lesser diagnosis than mental retardation." *Sheeks v. Commissioner*, 544 F. App'x 639, 641 (6th Cir. Nov. 2013). In October 2001, plaintiff's IQ test scores were as follows: "verbal IQ of 74, a performance IQ of 72, for a full scale IQ of 70." (A.R.

performance in school (A.R. 262-81), marginal employment, and persistent legal problems resulting in extended periods of incarceration (A.R. 34-35, 45-51, 58). The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment, including listing 12.05(C). (A.R. 16-17). He found plaintiff's argument unpersuasive:

> [C]laimant's attorney argued at the hearing that the claimant's IQ scores meet listing 12.05C. However, the record does not contain a diagnosis of mental retardation . The record contains IQ scores of 74, 72 and 70, which were noted as borderline intellectual functioning (Exhibit 1F at 2). Moreover, claimant's school records contain no intellectual testing or individualized education plans (IEPs) (Exhibits 16E and 17E). Although claimant alleges a history of special education that is not reflected in his school records (Exhibits 16E and 17E). Furthermore, his school records indicate that his grades were sporadic, ranging from As to Fs (Exhibits 16E and 17E). Moreover, although no formal testing was undertaken at the September 2010 consultative exam, Dr. Baird indicated that the claimant appeared to have low average intelligence (Exhibit 6F). Furthermore, his jail records document unremarkable thought processes, thought content, and cognitive functioning (Exhibit 14F at 16). As a result, there is no evidence to support claimant's argument that he meets listing 12.05C.

(A.R. 17).

No mental health professional has ever offered a diagnosis that plaintiff is mentally retarded. Although a diagnosis of mental retardation is not a necessary prerequisite to satisfy listing 12.05, "its absence is probative for a 12.05C determination." *Peterson v. Commissioner*, 552 F. App'x at 539. Further, the ALJ is responsible for making factual findings regarding the validity of IQ scores, not the court. *See Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001) (citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *see also Barrett v. Commissioner*, No. 13-4391, slip op. at 4 (6th Cir. July 22, 2014); *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012)

---

294).  This report made no reference to plaintiff's alcohol and substance abuse. (A.R. 294-95). Plaintiff's substance abuse during this period eventually came to light in September 2010, when he revealed to Psychologist Baird that from 1995 through 2002 he had been "using crack cocaine, powder cocaine, alcohol and marijuana." (A.R. 320).

(collecting cases); *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (same). The ALJ did not find the low IQ score emphasized by plaintiff to be persuasive in light of the other evidence of record.[4] It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in his favor. His burden on appeal is much higher. He must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Commissioner*, 552 F. App'x at 540. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment, including listing 12.05(C), is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ's factual finding regarding his credibility is not supported by substantial evidence because he used "boilerplate language" and did not provide an adequate explanation why he found that plaintiff's testimony was not credible. (Plf. Brief at 10, 13-14). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v.*

---

[4] Plaintiff's testimony (A.R. 49-50) and school records (A.R. 262-81) document his marginal effort and sporadic attendance. The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Commissioner*, 357 F. App'x 672, 677 (6th Cir. 2009); *see Peterson v. Commissioner*, 552 F. App'x at 540.

*Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ carefully considered the records that plaintiff presented in support of his claim. (A.R. 18-20). He observed that no treating source had indicated that plaintiff was disabled or had any vocationally relevant functional limitations. (A.R. 20). He noted that plaintiff's primary

care provider observed that plaintiff's mood and affect were appropriate, his memory was intact, and he had good insight and judgment. (A.R. 19). Plaintiff reported to the care provider "that when he takes his medications, his moods are calmer and he is able to control himself." (A.R. 19). When plaintiff was returned to jail in January 2012, he denied any significant mental health issues, and on examination his mood was euthymic, his affect was full, and he had "unremarkable" thought content, thought processing and cognitive functioning. (A.R. 19). The ALJ summarized the record as indicating "some limited psychiatric treatment consisting mainly of medications provided by his primary care provider. He sought out psychiatric treatment in August 2011, but the record contains only one visit. Upon incarceration in January 2012, his mental status appears rather benign." (A.R. 19-20). Although plaintiff had a history of violence, the records indicated that he was able to control himself when he was compliant with his medications. (A.R. 20). The ALJ's RFC finding accommodated plaintiff's mental impairments by limiting him to "simple tasks, no fast pace jobs or production quotas, and no more than occasional contact with others." (A.R. 20). The ALJ rejected plaintiff's testimony claiming that his mental impairments prevented him from working:

> Claimant testified from jail and indicated that he would remain incarcerated for several more years. He testified that he was in special education while he was in school. He is currently taking psychiatric medications. He testified that when he was not in jail he was prescribed Ritalin. Claimant testified he was seen at Arbor Circle for a few sessions and then was incarcerated, so he could not continue treatment. In addition, he testified that he had a history of numerous arrests and violence towards others.
>
> The records do not indicate that the claimant received special education (Exhibits 16E and 17E). Moreover, the records document that when the claimant takes his medications he reports his moods are better and he is more calm (Exhibit 11F at 5). In addition, the claimant's mental status exams are generally benign. His primary care provider noted that his memory was intact, and his mood and affect are appropriate (Exhibits 5F at 10 and 11F at 20). Furthermore, he reported no significant psychiatric issues upon incarceration in January 2012, and his exam was essentially normal[,] noting euthymic mood, full affect, and unremarkable thought processes, content, and cognitive functioning (Exhibit 14F at 6).

> Therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.
>
> * * *
>
> Claimant['s] records document minimal and intermittent treatment with generally normal mental status exams (Exhibits 5F at 10, 11F at 20 and 14F at 6). Furthermore, the claimant is able to do dishes, laundry, mow the grass, shop in stores, and spend time with others (Exhibit 5E). Further, claimant's records document that he is able to maintain personal relationships. (Exhibits 10F and 6F).
>
> * * *
>
> The record documents claimant has had limited and intermittent treatment. Most of his exams showed his memory was intact, and his mood and affect were appropriate (Exhibits 5F at 10 and 11F at 20). Furthermore, he reported no significant psychiatric issues upon incarceration in January 2012, and his exam was essentially normal[,] noting euthymic mood, full affect, and unremarkable thought processes, content and cognitive functioning (Exhibit 14F at 6). Moreover, claimant's reported activities of daily living are inconsistent with his allegations of disabling mental health problems (Exhibits 5E, 10F and 6F).

(A.R. 18-21). The ALJ's analysis of the evidence is detailed and grounded in the record. It hardly qualifies as "boilerplate." The ALJ's explanation of his factual finding regarding plaintiff's credibility is more than sufficient and is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ committed reversible error "by basing a hypothetical question to the vocational expert upon inadmissible evidence." (Plf. Brief at 10). Specifically, he argues:

> Over objection, the ALJ asked the vocational expert to consider the restrictions in an unsigned medical evaluation (55). Since 42 CFR 404.1519(o)(2)(b) [sic] specifically bans the use of unsigned medical reports to make determinations in a Social Security case, how could the ALJ ask such a question? And since there is no evidence that he did not consider

> the expert's answer to this question in his determination that there were jobs available to Plaintiff, then his opinion is fatally flawed on this point alone (22). Cases such as *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927-28 (6th Cir. 1987) have held that the Defendant may rely upon a vocational expert's answer to a hypothetical question only if the assumptions in that question are supported by substantial evidence, which clearly could not be the case here.

(Plf. Brief at 14-15).[5] Plaintiff's argument, to the extent that it is intelligible, is meritless. The ALJ's first hypothetical question asked the ALJ to assume a person of plaintiff's age, with his education and work experience, with no exertional limitations, but with the non-exertional limitations restricting him to simple work with occasional contact with the public, coworkers and supervisors, and no fast pace jobs or jobs with production quotas. (A.R. 53). These are the limitations that the ALJ later incorporated into his factual finding regarding plaintiff's RFC. (A.R. 17). The VE's response to the first hypothetical question indicated that there were approximately 215,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 54). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 22). The VE's testimony provides substantial evidence supporting the ALJ's finding that plaintiff was not disabled at step 5 of the sequential analysis. *See Hill v. Commissioner*, No. 13-6101, __ F. App'x __, 2014 WL 1257948, at * 4 (6th Cir. Mar. 27, 2014); *Lee v. Commissioner*, 529 F. App'x 706, 715 (6th Cir. 2013).

       The ALJ asked the VE several additional hypothetical questions (A.R. 54-56), but he did not base his decision denying plaintiff's claim for SSI benefits on the VE's response to those questions. The practice of asking the expert witness a series of hypothetical questions, each with differing assumptions, is commonplace. Merely posing a hypothetical question to a VE is not a

---

[5] Plaintiff's citation to "42 CFR 404.1519(o)(2)(b)" fails to correspond to any statute or regulation applicable to a claim for SSI or DIB benefits.

statement of the ALJ's acceptance of any of the limitations listed. The question and response simply create a record establishing a number of jobs available under a particular set of assumptions. The ALJ is not bound in any way by a VE's response to a hypothetical question featuring restrictions different from those adopted by the ALJ in his factual finding regarding the plaintiff's RFC. *See, e.g.*, *Grover v. Commissioner*, No. 1:11-cv-1208, 2013 WL 3049086, at * 11 (W.D. Mich. June 17, 2013).

The ALJ's third hypothetical question incorporated limitations suggested on a Michigan Department of Human Services form. (Exhibit 15F, A.R. 410-11). Plaintiff objected that the exhibit should be disregarded because it was unsigned. (A.R. 55). Because it was possible that the proponent of Exhibit 15F might later attempt to cure the defect in the exhibit by supplying a signed version after the hearing, the ALJ avoided inefficient, piecemeal proceedings by asking the VE a hypothetical question based on Exhibit 15F. (A.R. 54-55). The signature defect in this exhibit was never cured. (A.R. 411). The ALJ never mentioned Exhibit 15F in his opinion. The ALJ did not deny plaintiff's claim for SSI benefits based on VE testimony regarding Exhibit 15F. Plaintiff has not cited, and I have been unable to locate, any case overturning an ALJ's decision simply because he or she asked a VE a hypothetical question incorporating restrictions suggested in an unsigned exhibit. Further, if any error occurred, it was utterly harmless, because the ALJ's decision and the hearing transcript leave no doubt that the ALJ denied plaintiff's claim for SSI benefits based on the VE's response to his first hypothetical, which made no reference to Exhibit 15F. (A.R. 22, 53-54).

**4.**

Plaintiff argues that the ALJ was biased and should have recused himself from the hearing. Plaintiff makes an *ad hominem* argument, accusing the ALJ of "incompetence and/or bias against claimants in general."[6] (Plf. Brief at 15). Plaintiff's reply brief "clarifies" that he is claiming "bias against competence." (Reply Brief at 4). This does not approach the convincing evidence of actual bias necessary to overcome the presumption that the ALJ was impartial. The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the

---

[6]"This court may inquire only whether substantial evidence in the record supported the ALJ's conclusion, and it will not be distracted from that task by counsel's *ad hominem* attack on the ALJ. Such a tactic neither serves his client's interests nor reflects well on counsel. On the contrary, it tends to undermine counsel's credibility. . . . [P]laintiff's hyberbolic and *ad hominem* attack on the ALJ's integrity overstates the case and seriously undermines the persuasive force of plaintiff's argument." *Bieschke v. Commissioner*, No. 1:07-cv-1225, 2009 WL 735077, at * 8 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) (internal citation omitted).

case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). There is no competent evidence that the ALJ was biased against plaintiff or his attorney, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   July 24, 2014                                  /s/  Joseph G. Scoville
                                                        United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).